**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Weese, | No. CV-22-01564-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Lusso Auto LLC, et al., | |
| Defendants. | |

Before the Court is Plaintiff Jason Weese's Motion for Default Judgment (Doc. 13). For the following reasons, the Motion will be granted as to Defendants Lusso Auto LLC, FMJNR LLC, and Jong Min Rhee on Counts I–III, and will be denied as to Defendant Yuki Rhee and Count IV.

**I.   BACKGROUND**

On September 15, 2022, Plaintiff Jason Weese initiated this action against Defendants Lusso Auto LLC, FMJNR LLC, Jong Min Rhee ("Mr. Rhee"), and Yuki Rhee ("Ms. Rhee") alleging counts of fraud, consumer fraud, negligent representation, and violation of Arizona's RICO statute. (Doc. 1). Mr. Rhee is the sole member of Lusso Auto and FMJNR. (Doc. 15 at 3).

The Complaint alleges that on or about January 11, 2022, Plaintiff contacted Mr. Rhee with an interest in purchasing a Rolls Royce Cullinan Black Badge. (Doc. 1 at 2). Mr. Rhee "advised that although he had the desired vehicle, he was not interested in selling," but after some discussion, Mr. Rhee gave Plaintiff a price. (Doc. 1 at 2). Plaintiff

agreed to the price and asked whether Defendants could install a certain body kit on the vehicle. (Doc. 1 at 2). Mr. Rhee stated that Defendants could do so. (Doc. 1 at 2).

Thus, on or about January 11, 2022, Plaintiff purchased a 2022 Rolls Royce Black Badge Cullinan with a specified vehicle identification number from Lusso Auto and hired Lusso Auto to install several upgrades, including installation of the body kit. (Doc. 1 at 2). Lusso Auto invoiced Plaintiff for $668,892.00 for the purchase and upgrades. (Doc. 1 at 2). On January 13, 2022, per Defendants' direction, Plaintiff wired $590,000 to FMJNR as an initial deposit. (Doc. 1 at 3). Plaintiff then received the Rolls Royce and returned it to Lusso for installation of the upgrades. (Doc. 1 at 3). On March 8, 2022, Plaintiff wired FMJNR the remaining $78,892 owed. (Doc. 1 at 3).

The Rolls Royce was never returned to Plaintiff, though, and a CARFAX report shows that "Defendants hold title as a 'personal lease vehicle' and not as owner." (Doc. 1 at 3). Plaintiff alleges that Defendants never owned the Rolls Royce, nor were they licensed automobile dealers authorized to engage in the marketing and sale of vehicles. (Doc. 1 at 3).

On October 24, 2022, Plaintiff filed for entry of default against Defendants, who have not appeared in this action. (Doc. 11). The Clerk of Court entered default the following day. (Doc. 12). On November 29, 2022, Plaintiff filed the instant Motion for Default Judgment seeking treble damages in the amount of $2,025,921.00, taxable costs in the amount of $952.00, and pre- and post-judgment interest. (Doc. 13).

**II. DISCUSSION**

    **a. Subject Matter Jurisdiction, Personal Jurisdiction, and Service**

When default judgment is sought against a non-appearing party, a court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter judgment in the first place."). A court has a similar duty with respect to service of process. *See Fishman v. AIG Ins. Co.*, No. CV 07-0589-

PHX-RCB, 2007 WL 4248867, at *3 (D. Ariz. Nov. 30, 2007) ("Because defendant has not been properly served, the court lacks jurisdiction to consider plaintiff's motions for default judgment."). These considerations are "critical because '[w]ithout a proper basis for jurisdiction, or in the absence of proper service of process, the district court has *no power to render any judgment* against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process.'" *Id.* (citing *S.E.C. v. Ross*, 504 F.3d 1130, 1138–39 (9th Cir. 2007)).

The Complaint alleges subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C § 1332(a). Plaintiff resides in Arizona, and Mr. and Ms. Rhee reside in Nevada. (Doc. 1 at 1). The LLC Defendants, which take the citizenship of their members, are both Nevada residents because Mr. Rhee is the sole member of both LLCs. (Doc. 15 at 3). Accordingly, there is complete diversity of citizenship, and the amount in controversy exceeds $75,000. (Doc. 1 at 6). Plaintiff has established this Court's subject matter jurisdiction.

Further, the Court has personal jurisdiction over Defendants because they did business in Arizona, and specific to this case, they purported to sell the Rolls Royce to Plaintiff in Arizona. (Doc. 1 at 1–3); *see Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (stating a court has personal jurisdiction if a defendant "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state" (internal quotation marks omitted)). Finally, each Defendant was properly served. (Docs. 8–10).

### b. Default Judgment Analysis: *Eitel* Factors

"A defendant's default does not automatically entitle a plaintiff to a default judgment." *Hartford Life & Accident Ins. Co. v. Gomez*, No. CV-13-01144-PHX-BSB, 2013 WL 5327558, at *2 (D. Ariz. Sept. 24, 2013). Instead, once a default has been entered, the district court has discretion to grant a default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors the Court may consider include: (1) the possibility of prejudice to the plaintiff; (2) the merits of the

claim; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the policy favoring a decision on the merits (collectively, the "*Eitel* factors"). *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In applying the *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

> *i. First, Fifth, Sixth, and Seventh* Eitel *Factors*

"In cases like this one, in which Defendants have not participated in the litigation at all, the first, fifth, sixth, and seventh factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *3 (D. Ariz. Mar. 27, 2020). The first factor—the possibility of prejudice to Plaintiff—weighs in favor of granting default judgment. Defendants have failed to appear in this action, despite having been served in September 2022. (Docs. 8–10). If Plaintiff's Motion is denied, then Plaintiff will likely be without other recourse for recovery. *Zekelman*, 2020 WL 1495210, at *3 (citing *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)).

The fifth and sixth factors—the possibility of a dispute concerning material facts and whether default was due to excusable neglect—also weigh in favor of granting default judgment. Given the allegations of the Complaint (further discussed below) and Defendants' default, the Court finds that no genuine dispute of material facts would preclude granting the Motion. And because Defendants were properly served and have never appeared in this case, the Court finds it unlikely that Defendants' failure to appear and the resulting default was the result of excusable neglect. *See id.* at *4 ("Due to Defendants' failure to participate, there is no dispute over material facts (except as to damages) and no indication that default is due to excusable neglect.").

The seventh factor—the policy favoring a decision on the merits—generally weighs in favor of denying default judgment because "[c]ases should be decided upon

their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But the mere existence of FRCP 55(b) "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177. Moreover, Defendants' unexplained absence at this juncture of the case makes a decision on the merits impossible. Thus, the Court is not precluded from entering default judgment against Defendants. *See Emp. Painters' Tr. v. Ethan Enters., Inc.*, 480 F.3d 993, 1000–01 (9th Cir. 2007); *Zekelman*, 2020 WL 1495210, at *4 (citation omitted) ("[T]he default mechanism is necessary to deal with wholly unresponsive parties who could otherwise cause the justice system to grind to a halt. Defendants who appear to be 'blowing off' the complaint should expect neither sympathy nor leniency from the court.").

### ii. Second and Third *Eitel* Factors

The second and third factors "are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Zekelman*, 2020 WL 1495210, at *5 (citation omitted). When the complaint sufficiently states a claim for relief, these factors favor a default judgment. *See Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir. 1978). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Zekelman*, 2020 WL 1495210, at *5 (citation omitted). Here, Plaintiff seeks default judgment on all four counts asserted in the Complaint. The Court will first address whether Plaintiff has stated meritorious claims against Defendant Yuki Rhee, and will then address each claim against the other Defendants in turn.

#### 1. Defendant Yuki Rhee

The only allegations in the Complaint pertaining to Ms. Rhee are that Mr. and Ms. Rhee "are husband and wife residing in Nevada" and that "[a]t all relevant times, [Mr.] Rhee was acting for the benefit of and in furtherance of the marital community." (Doc. 1 at 1). In Arizona, "[t]o state a claim against a martial community, a plaintiff must plead sufficient facts, taken as true, to show that the alleged tortious conduct was either calculated to be, was performed for, or resulted in a benefit to the marital community."

*Doe v. United States*, No. CV-17-01991-PHX-GMS (JZB), 2018 WL 2431774, at *8 (D. Ariz. May 30, 2018) (citing *Howe v. Haught*, 462 P.2d 395, 397 (Ariz. Ct. App. 1969)). A conclusory allegation that a defendant acted for or on behalf of the marital community is insufficient to state a claim against a marital community because it fails to satisfy the Rule 8 pleading standard. *Id.* (declining to enter default judgment against a defendant and dismissing her from the action where the complaint alleged merely that her husband "acted for and on behalf of his marital community"); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citation and quotation marks omitted)). Accordingly, because the Complaint's allegations against Ms. Rhee and the marital community are conclusory, Plaintiff has failed to state a claim against Ms. Rhee, and the Court will deny default judgment against her and dismiss her from this action. *See Doe*, 2018 WL 2431774, at *8.

2. Fraud

In Arizona, a plaintiff must establish nine elements to prove a fraud claim:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; and (9) his consequent and proximate injury.

*Enyart v. Transamerica Ins. Co.*, 985 P.2d 556, 562 (Ariz. Ct. App. 1998). Moreover, Federal Rule of Civil Procedure 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake," but "intent, knowledge, and other conditions of a person's mind may be alleged generally."

Here, the Complaint alleges that Defendants represented that they owned the Rolls Royce, which was false. (Doc. 1 at 2–3). Obviously, the seller's ownership of the subject vehicle is material to its sale. Next, it is reasonable to infer that Defendants knew they did

not own the vehicle because the CARFAX report lists them as lessees (Doc. 1 at 3). It is also reasonable to infer that Defendants made the false representation intending to induce Plaintiff's purchase given that Plaintiff had contacted Mr. Rhee to inquire about purchasing the Rolls Royce. (Doc. 1 at 2). Plaintiff did not know the representation was false and rightfully relied on it when he wired payments to FMJNR. (Doc. 1 at 3); *see Chernov v. Sandell*, 206 P.2d 348, 332 (Ariz. 1949) (recounting a prior holding that a purchaser had the right to rely upon a seller's false representation even though an examination of public records would have quickly shown the representation to be false). As a direct result of Defendants' misrepresentation, Plaintiff suffered economic injury. (Doc. 1 at 3). Because each element has been sufficiently pled, Plaintiff's Complaint states a fraud claim and the claim appears meritorious.

### 3. Consumer Fraud

"The elements of a private cause of action under the [Arizona Consumer Fraud] Act are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *Castle v. Barrett-Jackson Auction Co., LLC*, 276 P.3d 540, 542 (Ariz. Ct. App. 2012); *see* A.R.S. § 44-1522(A). Here, too, Plaintiff has adequately pled a misrepresentation—Defendants' statement that they owned the Rolls Royce. Defendants' misrepresentation was made in connection with the purported sale of the vehicle and upgrades. And again, because of the misrepresentation, Plaintiff suffered economic injury. Accordingly, the Complaint states a claim under the Arizona Consumer Fraud Act.

### 4. Negligent Misrepresentation

There are five elements to a negligent misrepresentation claim in Arizona:

> (1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage.

*KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 412 n.7 (Ariz. Ct. App. 2014).

Here, Defendants provided false information about their ownership of the Rolls Royce during the transaction. *See Crossfirst Bank v. Vieste SPE LLC*, No. CV-18-01637-PHX-DLR, 2021 WL 2517892, at *7 (D. Ariz. Mar. 31, 2021) (stating that negligent misrepresentation applies to any transaction in which the defendant has a pecuniary interest). It can reasonably be inferred that Defendants knew Plaintiff was relying on their ownership of the vehicle in purchasing it. In representing that they owned the Rolls Royce, Defendants failed to use reasonable care. There is no indication of any circumstances to put Plaintiff on notice that Defendants may not have owned the vehicle, so Plaintiff was justified in relying on the information. *See St. Joseph's Hosp. & Med. Ctr. v. Rsrv. Life Ins. Co.*, 742 P.2d 808, 817 (Ariz. 1987) ("In the absence of circumstances putting a reasonable person on inquiry, a person is justified in relying on a misrepresentation of a material fact without making further inquiry."). Finally, Plaintiff suffered damages by paying for the Rolls Royce and upgrades that he never received. Plaintiff has sufficiently pled all the elements of negligent misrepresentation.

### 5. Civil RICO

Arizona's Organized Crime, Fraud and Terrorism Act, also known as Arizona's racketeering or "RICO" statute, provides a private right of action to "[a] person who sustains reasonably foreseeable injury to his person, business or property by a pattern of racketeering activity." A.R.S. § 13-2314.04(A). The RICO Act defines racketeering as "(1) an act (2) 'that would be punishable by imprisonment for more than one year under the laws of [Arizona] regardless of whether the act is charged or indicted,' (3) 'involving' any one of a number or enumerated offenses (4) 'committed for financial gain.'" *State ex. rel. Horne v. Campos*, 250 P.3d 201, 208 (Ariz. Ct. App. 2011) (quoting A.R.S. § 13-2301(D)(4)). As relevant here, the enumerated offenses include "[a] scheme or artifice to defraud." A.R.S. § 13-2301(D)(4)(b)(xx). A "pattern of racketeering activity" as applicable in this case means at least two acts of racketeering where (1) "[t]he last act of

racketeering activity that is alleged as the basis of the claim occurred within five years of a prior act of racketeering," (2) "[t]he acts of racketeering . . . were related to each other or to a common external organizing principle," and (3) "[t]he acts of racketeering were continuous or exhibited the threat of being continuous." A.R.S. § 13-2314.04(T)(3).

Here, Plaintiff argues that Defendants committed one act of racketeering in the sale of the Rolls Royce and a separate act of racketeering in the sale of the upgrades to the Rolls Royce. (Doc. 13 at 6). Even if that were true, those acts are not continuous nor did they exhibit the threat of being continuous such that they constitute a pattern of racketeering activity under Arizona law. Arizona courts have held that acts are continuous if they "extend over a substantial period of time, i.e., over more than a few weeks or months." *Lifeflite Med. Air Transp., Inc. v. Native Am. Air Servs., Inc.*, 7 P.3d 158, 161–62 (Ariz. Ct. App. 2000). Here, Defendants' misrepresentations that they could deliver both the Rolls Royce and the upgrades occurred *at most* two days apart; Plaintiff purchased the Rolls Royce on January 11, 2022, the same day he contacted Mr. Rhee about it, and he wired the initial deposit for both the Rolls Royce and the upgrades on January 13, 2022. (Doc. 1 at 2–3). Even if Defendants' misrepresentations continued until Plaintiff paid the remaining amount due on March 8, 2022, the acts took place over only a couple of months, which falls short of being continuous under *Lifeflite*.

Moreover, "allegations of one scheme, perpetrated against a single victim, are typically insufficient to establish a pattern" of racketeering activity. *R. Prasad Indus. v. Flat Irons Env't Sols. Corp.*, No. CV 12-8261-PCT-JAT, 2013 WL 2217831, at *17 (D. Ariz. May 20, 2013); *see Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1363–64 (9th Cir. 1987) (finding a lack of continuity or threat of continuity where the defendant made multiple misrepresentations as part of a single effort to induce the plaintiff to enter into a contract).[1] Here, although Plaintiff now attempts to paint the

---

[1] The Arizona Court of Appeals has stated that because the Arizona and federal RICO statutes "are analogous . . . we look to federal interpretations for guidance" on the Arizona statute. *Lifeflite*, 7 P.3d at 161; *see also Sitevoice, LLC v. Gyrus Logic, Inc.*, No. 2:14-cv-0883-HRH, 2014 WL 4722329, at *7 (D. Ariz. Sept. 23, 2014) (applying *R.*

sale of the Rolls Royce and the sale of the upgrades as separate transactions, the allegations of the Complaint make clear that the parties treated them as a single event. The purchase of the Rolls Royce and installation of the upgrades were agreed upon in the same discussions, Defendants billed Plaintiff for the vehicle and the upgrades together, and Plaintiff paid for the vehicle and upgrades collectively. (Doc. 1 at 2–3). The Complaint does not allege that Defendants have made similar misrepresentations to other customers or that there is otherwise a threat of continuing racketeering acts. The Complaint alleges an isolated fraud, not a pattern of racketeering. *See Medallion*, 833 F.2d at 1365 (stating that the continuity inquiry asks "whether the acts are isolated or sporadic, on the one hand, or whether they indicate a threat of continuing activity, on the other"). Accordingly, Plaintiff's Complaint fails to state a civil RICO claim.

In sum, with respect to the second and third *Eitel* factors, the Complaint sufficiently states meritorious claims for fraud, consumer fraud, and negligent misrepresentation against Defendants Lusso Auto, FMJNR, and Jong Min Rhee. The Complaint fails to state a civil RICO claim because it does not establish a pattern of racketeering activity, and it fails to state a claim against Defendant Yuki Rhee or her marital community because it makes only a conclusory allegation about her. The second and third factors therefore weigh in favor of default judgment on some claims but not others.

### iii. Fourth Eitel *Factor*

Under the fourth factor, this Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Zekelman*, 2020 WL 1495210, at *4 (internal quotations omitted) (citation omitted).

Here, Plaintiff seeks damages in the amount of $2,025,921. (Doc. 13 at 1). But because he does not have a meritorious RICO claim, he is not entitled to treble damages

*Prasad* to a state-law RICO claim).

and instead has only actual damages in the amount he paid for goods that were not delivered. Although the $675,307 in actual damages is still a substantial amount, it is plainly proportional to the seriousness of Defendants' conduct through which they induced Plaintiff to pay them for a vehicle and upgrades that they never delivered. This factor therefore weighs in favor of granting default judgment.

Collectively, the *Eitel* factors weigh in favor of entry of default judgment against Defendants Lusso Auto, FMJNR, and Jong Min Rhee on Counts I–III. Because the Complaint does not state a claim against Defendant Yuki Rhee, however, the Court will not enter default judgment against her. And because the Complaint fails to sufficiently plead a civil RICO claim and because treble damages thereunder would be excessive, the Court will not grant default judgment on Count IV.

**c. Relief Sought**

Unlike the Complaint's other factual allegations, those pertaining to damages are not taken as true upon default. *Geddes*, 559 F.2d at 560. Thus, a plaintiff "is required to prove all damages sought in the complaint." *Tolano v. El Rio Bakery*, No. CV-18-00125-TUC-RM, 2019 WL 6464748, at *6 (D. Ariz. Dec. 2, 2019) (internal quotations omitted) (quoting *Philip Morris USA, Inc.*, 219 F.R.D. at 498). A plaintiff must "provide evidence of its damages, and the damages sought must not be different in kind or amount from those set forth in the complaint." *Fisher Printing Inc. v. CRG LTD II LLC*, No. CV-16-03692-PHX-DJH, 2018 WL 603299, at *3 (D. Ariz. Jan. 22, 2018) (citing *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011)). Courts may rely on declarations submitted by the plaintiff in determining appropriate damages. *Tolano*, 2019 WL 6464748, at *6 (citing *Philip Morris USA, Inc.*, 219 F.R.D. at 498).

Plaintiff seeks treble damages, taxable costs, pre-judgment interest, and post-judgment interest. Because the Court will not grant default judgment on the RICO claim, however, there are no grounds for treble damages and the Court will instead consider Plaintiff's actual damages.

### i. Actual Damages

Plaintiff's Motion asserts $675,307 in damages—$668,892 wired to Defendants to purchase the Rolls Royce and upgrade, as well as $6,415 that Plaintiff paid to have the Rolls Royce insured. (Doc. 13 at 9). Attached to Plaintiff's Motion are an invoice from Lusso Auto showing the amount due for the Rolls Royce and upgrades (Doc. 13-3) and receipts for wire transfers from Plaintiff to FMJNR for $590,000 and $78,892 (Docs. 13-4 and 13-5). This evidence proves $668,892 in damages. Also attached is an auto insurance policy document for the Rolls Royce showing a premium amount of $6,415. (Doc. 13-6). There is no evidence of Plaintiff's payment of the premium, however, and the attached "Sum Certain Affidavit" from Plaintiff's counsel makes no mention of the insurance damages. Accordingly, the Court finds insufficient evidence to support damages for insuring the Rolls Royce. Plaintiff has proven actual damages in the amount of $668,892.

### ii. Taxable Costs

Plaintiff seeks taxable costs for the filing fee and service. LRCiv 54.1(a) sets forth the procedure for requesting taxable costs in this District:

> A party entitled to costs shall, within fourteen (14) days after the entry of final judgment, unless time is extended under Rule 6(b), Federal Rules of Civil Procedure, file with the Clerk of Court and serve upon all parties, a bill of costs on a form provided by the Clerk.

Compliance with LRCiv 54.1(a) is mandatory. *See Felix v. Pic-N-Run, Inc.*, No. CV 09-8015-PCT-JAT, 2012 WL 551645, at *5 (D. Ariz. Feb. 21, 2012). Accordingly, the Court will not award costs at this time; Plaintiff must follow the procedures of LRCiv 54.1(a).

### iii. Interest

Pre-judgment interest in a diversity case is governed by state law. *In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007). In Arizona, "[p]re-judgment interest is due on liquidated claims." *Transamerica Ins. Co. v. Trout*, 701 P.2d 851, 857 (Ariz. Ct. App. 1985). "A claim is liquidated if the evidence furnishes data which if believed makes it

possible to compute the amount with exactness." *Id.* Plaintiff's damages here were determined exactly based on the amount he paid Defendants. Accordingly, his claim is liquidated and he is entitled to pre-judgment interest.

Federal law governs post-judgment interest. *Northrop Corp. v. Triad Int'l Mktg., S.A.*, 842 F.2d 1154, 1155 (9th Cir. 1988). Pursuant to 28 U.S.C. § 1961, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Thus, Plaintiff is entitled to post-judgment interest, as well.

### III.   CONCLUSION

The Court will enter default judgment against Defendants Lusso Auto LLC, FMJNR LLC, and Jong Min Rhee on Plaintiff's claims for fraud, consumer fraud, and negligent misrepresentation. Plaintiff will be awarded $668,892 and pre- and post-judgment interest.

**IT IS THEREFORE ORDERED:**

1. That Plaintiff Jason Weese's Motion for Default Judgment (Doc. 13) is **granted in part and denied in part**;
2. That default judgment is **entered** pursuant to FRCP 55(b)(2) in favor of Plaintiff and against Defendants Lusso Auto LLC, FMJNR LLC, and Jong Min Rhee on Counts I (fraud), II (consumer fraud), and III (negligent misrepresentation);
3. That default judgment is **denied** as to Defendant Yuki Rhee and Count IV (civil RICO);
4. That all claims against Defendant Yuki Rhee are **dismissed**;
5. That Count IV is **dismissed** with prejudice in its entirety;

///

///

///

///

///

6. That Defendants Lusso Auto LLC, FMJNR LLC, and Jong Min Rhee are jointly and severally liable to Plaintiff in the amount of **$668,892.00**, plus pre- and post-judgment interest at the rate of 4.73% per annum until paid in full; and

7. That the Clerk of Court shall enter judgment accordingly and **terminate** this action.

Dated this 17th day of January, 2023.

Honorable Steven P. Logan
United States District Judge